## A. H. RIPPETOE ET AL. v. T. A. LOW.

(Case No. 3680.)

1. STREETS — LIMITATION.— Adverse continuous possession of a street in a city or town for ten years will confer title by limitation.

2. DEED — FIVE YEARS' LIMITATION AS TO STREETS.— A deed to a lot in a city or town only conveys the land to the line of the street, and the statute of limitation of five years does not apply where the owner takes and holds adverse possession of a portion of the street adjoining.

3. RESCINDING SALE OF LAND — STREETS.— The purchaser of a brick business house and the lot on which it is situated, and who is in no way at fault in the matter, may have the sale rescinded on discovering a valuable portion of the improvements to be in the street, the possession of the street not having continued long enough to confer title by limitation.

APPEAL from Washington. Tried below before the Hon. E. B. Turner.

This suit was commenced on the 19th of July, 1875, by T. A. Low against A. H. Rippetoe and H. C. McIntyre. The petition alleges that on the 5th of June, 1875, plaintiff purchased of defendants a part of lot 51, the boundaries of which are given, situated in the city of Brenham, worth the sum of $800, upon which was situated a brick building, worth $1,200; that the price of the house and lot, as agreed upon, was $2,000, of which $1,000 was paid in cash, and the note of plaintiff, payable on the 1st of January, 1876, was given for the balance, and a deed of conveyance of the lot and house, with a general warranty of title, was executed by defendants. The petition further alleges that he purchased because the house was suitable for his business, and that the defendants represented that the house was wholly situated upon lot 51; but that, upon a subsequent survey, it was ascertained that the eastern part of the house is twelve feet in Goat Row, one of the streets of Brenham, as designated by the map of the city; that plaintiff, with a knowledge of this fact, cannot safely take possession of the house and make certain necessary repairs upon it, which will cost the sum of $1,500, as he would be liable to eviction by the city of Brenham, or

its authorities, and the same would not be covered by the defendants' warranty; that at the time of his purchase plaintiff did not know, and could not reasonably anticipate, the facts in regard to the location of the house, which were well known to defendants, who fraudulently concealed the facts; that he has not taken possession of the house, and has offered to cancel the trade and reconvey the property, which defendants refuse to do.

· Plaintiff prays judgment for rescission of the contract of sale, offering to reconvey the lot, and for the return of his purchase money and for damages.

On the 10th of September, 1875, defendants answered by a general demurrer and by a special plea, admitting the conveyance, the payment of the purchase money, and execution of the notes as alleged; denying that they had made any representations as to the location of the house on the lot, and averring that plaintiff, before his purchase, had examined the house and lot, and had all the means of information as to their location possessed by defendants; that the lot and improvements are in the possession of the plaintiff, and no proceedings have been instituted by the city of Brenham or its authorities to eject plaintiff.

The defendants further allege that the house is wholly on the lot conveyed by them, the eastern line of the house being coincident with the eastern line of the lot, and that no part of it is in the street; that they have had possession of the lot conveyed to plaintiff, and of that part upon which the house is situated, claiming title thereto, for more than twenty years, before the execution of their conveyance to plaintiff. They also allege peaceable, continuous, uninterrupted and exclusive adverse possession under deeds duly registered, with payment of taxes, for more than five years prior to their conveyance, and like possession, under title from the government, for more than three years, of the lot conveyed by them, and specially of that part of the lot upon which the house is situated.

The defendants further allege that the west line of Goat Row has, for more than twenty years, been recognized as

coincident with the eastern wall of the house on lot 51, and that for all that time the public have been, by the buildings, fences and other improvements erected thereon, excluded from the use, as a street or highway, of any portion of said lot within the boundaries claimed by defendants; and that the city of Brenham and its authorities have never set up any such right, or threatened to eject therefrom the defendants or the plaintiff.

The defendants further deny all facts alleged by the plaintiff, not expressly admitted in his plea.

By an amended petition, filed February 8, 1876, plaintiff alleges the institution of suit in this court upon his note for the deferred payment; that the lot without the house is valueless to him; that, to carry on his business, costly repairs of the house are necessary.

By a second amended petition, filed February 3, 1877, it is alleged that the value of the property is depreciated one-half by the location of the house within the street; that the alignment of the street is destroyed, and the width of the street diminished thereby.

By an amended answer filed July 2, 1877, the defendants allege that the house on lot 51 was erected in 1866; that the eastern wall of the house is coterminous with the eastern boundary of lot 51, as claimed by them; that at the same time they had inclosed with a fence all that part of lot 51 north of the house, and have held continuous possession of the lot so defined until the sale to plaintiff, excluding the public from the use of the lot as defined by said improvements; that the western line of Goat Row was then (in 1866) defined by buildings and fences erected on the lots fronting on said street, and the line so defined corresponded with the eastern wall of the house and fence on lot 51, and that during said time the corporate authorities and citizens of Brenham acquiesced in said line as the true western boundary of Goat Row; that before the conveyance to plaintiff, the eastern and western lines of Goat Row were clearly defined by buildings, fences and other improvements thereon, and plaintiff had the same means of information as the defendants in regard to the width of said street.

By an amended petition filed July 26, 1877, it is alleged that defendants, as an inducement to the purchase by plaintiff, represented to him that the lot conveyed was bounded on the north and east by two streets sixty feet wide; that plaintiff made the purchase relying upon the truth of this representation, which was false and designedly made with intent to deceive, and that Goat Row was but forty-seven feet wide, as defined by the buildings on each side of the street; that the value of the lot for plaintiff's business purposes was greatly diminished, and that, with a knowledge of the actual width of the street, plaintiff would not have purchased at any price.

By an amended answer filed January 1, 1878, defendant excepted to the last amended petition on the ground that the matters therein alleged were barred by limitation, and pleaded a general denial.

On the 7th of July, 1876, there was a trial, and verdict and judgment for the plaintiff, which was set aside and a new trial granted.

On the 7th of February, 1877, there was another trial, and verdict and judgment for the plaintiff, which was also set aside and a new trial granted.

On the 21st of January, 1878, there was a third trial.

The evidence was voluminous, and on all material issues was conflicting. Special issues were submitted by the court with the charge.

A map of the town formed part of the record.

The following is the charge given to the jury:

" I charge you that there is no such evidence in this case as will justify the setting aside the deed to plaintiff on account of statements as to the width of the streets Goat Row and Quitman, as such statements are simply descriptive, if the same place is enjoyable as a street by the persons as appeared to be at the time he purchased, and therefore you should discharge this evidence as affecting the rights of the parties to this suit."

" I have in the following part of the charge stated upon what findings you should return a general verdict for the defendants; still, if in following those directions you do not

find for defendants, but find a verdict for plaintiff, then he is entitled to recover the $1,000 paid by him, and the interest thereon from payment to this date at eight per cent. per annum. You are the exclusive judges of the weight of the evidence admitted in this case.

"*First.* On the 5th of June, 1875, the defendant conveyed to plaintiff the eastern portion of lot 51, bounded by Goat Row and Quitman streets, in the city of Brenham, and paid $1,000, the balance of the purchase money payable on the 1st day of January, 1876.

"The plaintiff now seeks by this suit to rescind the contract of sale and to recover back the money paid by him, on the ground that the brick house standing upon lot 51 is partly within the street named Goat Row. In order to entitle the plaintiff to a judgment rescinding and setting aside his contract for the purchase of said lot, he must show *beyond a reasonable doubt* that a part of the brick building on the lot conveyed to him is within a street in the city of Brenham, and that he is *liable to be evicted therefrom.*

"*Second.* You must find from all the evidence whether or not any portion of the brick building on lot 51 is in the street. On this question the best evidence of the location of the lot is the designation of its corners by natural or artificial objects. If you find from the evidence that the corners of lot 51 or of other lots on the west side of Goat Row were, in laying off the town of Brenham, designated by stakes or stubs, and that the eastern line of the brick building on lot 51 is substantially the same as the line designated in laying off the town, you will find for the defendants.

"*Third.* It is also competent to show boundary lines by the acquiescence of parties owning lots on the same street, continued for a period of ten years or more, and by the general recognition of and acquiescence in such line by the public, and by the city authorities of Brenham. And if, from such evidence, you find that the brick building is on the general alignment of the lots on the west side of Goat Row, you will find for defendants.

"*Fourth.* If, under the preceding charges, you find for the defendants, you will not proceed any further in your examination of the evidence, and will return your verdict that you find for the defendants. If, on the contrary, you find that the brick building on lot 51 is partly within the street named Goat Row, you will then return answers to the following questions, writing your answers immediately below the question:

"First question. Is the brick building on lot 51, or any part of it, in Goat Row? If you say it is, state how far? To this the jury said that the house was in Goat Row about six and a half feet.

"Second question. When was the brick building on lot 51 erected, and by whom? What is its length and width, and what is the length of the wall on Goat Row?

"Answer. In the fall of 1865, by H. C. McIntyre and Dr. Rippetoe — thirty by sixty feet. Length of wall on Goat Row sixty feet.

"Third question. Who has exercised ownership and control over the brick building on lot 51 from the time it was built to June 5, 1875?

"Answer. McIntyre and Rippetoe.

"Fourth question. Has any fence been erected on that part of lot 51 on a line with the building on the east back to its intersection with Quitman street?

"Answer. Yes.

"Fifth question. If you say 'yes,' then state when it was built, and how long the land inclosed between the north end of the brick building and Quitman street remained continuously in the exclusive possession of defendants and those under whom they claim, before they sold to plaintiff?

"Answer. In the spring of '73. Remained under the exclusive possession of defendants about two years.

"Sixth question. Have the taxes been paid on lot 51, and for what length of time and by whom?

"Answer. By McIntyre and Rippetoe from the time of purchase until sold to Low.

"If, as I have said before, you find that the building is

on lot 51 as originally staked off, then you will find for the defendants. But if you pass beyond this inquiry and find that the house is in part on the street Goat Row, then answer all the questions above submitted; and if you answer to the fifth question (adverse possession) five years or more, ·then find for the defendants.

"In stating the time the fence, if any, has been around the lot north of the building, you will state whether they were so continuously or exclusively occupied, and what period anterior to 28th of January, 1861; and again for what length of time since the 30th March, 1870, has it been so occupied by defendants and those under whom they claim before they sold to plaintiff."

.The jury returned also, their general verdict as follows:

"We, the jury, find for plaintiff, as per questions answered within; that it is to say, he is entitled to the $1,000 with interest, amounting to $1,209.99."

Judgment was rendered rescinding the sale and for the sum found for plaintiff.

Motion for new trial was overruled and the defendants appealed.

The errors assigned were numerous. Those discussed by counsel for appellants are:

1. Exclusion from computation the facts in relation to possession of the lot in controversy between 28th January, 1861, and 30th March, 1870.

2. What would constitute possession adverse to the city, of a street, and what abandonment.

4. Title to a lot in a city originally subject to the public easement, or right to use as a street, can be acquired by adverse possession, etc.

5. A conveyance of a town or city lot abutting on a street conveys title to the center of the street, subject to the public easement or right to use the same as a street.

6. Title to land dedicated as a street can be acquired under five years' statute, etc.

7. That the erection of the house was an invasion of the street, etc., and adverse possession.

. . . 12. Judgment should have been rendered for the defendants upon the verdict.

13. The finding of the jury as to the location of the lot is contrary to the evidence.

*Sayles & Bassett*, for appellants.

*Shepard & Garrett*, for appellee.

A. S. WALKER, J.— The town plat of Brenham showed the usual subdivisions of a town or city; streets and squares; blocks, and their subdivisions into lots; made and marked by actual surveys. The public squares and streets, by the map, and sales of lots with reference to the map, became and were reserved for public use. Lamar Co. *v.* Clements, 49 Tex., 354, and cases cited; Dillon on Mun. Corp., §§ 516, 518, 520, and authorities. From the dedication to the public it would follow that the public, during the existence of the city or the need for the street, has as perfect right *to the streets*, or to the use of the land covered by them, as the lot owner has to the part of the city tract inclosed within the lines of his lot. As against the right to the street, and as basis for title under limitation against the city or public, the deed to the lot is limited to the line of the street. This line marks the limit of the street as against the lot and of the lot against the street. A holding *under* the deed or grant of the lot could not extend beyond its lines. Therefore the requisites of the five years' statute of limitations would not be met by the extension of improvements beyond a lot and into the street adjoining such lot. The holding *may be adverse* to the city or to the public, but it is *not under deed*.

We recognize that adverse continuous possession for ten years under the statute would confer title; as would a compliance with any other of the articles of the laws of limitation.

From this we deduce conclusions upon the propositions raised in the appeal:

1. It is immaterial whether or not the suspension of the

statutes of limitation in the constitution of 1869 was repealed by the constitution of 1876. The verdict fails to find any connected adverse possession before the war with the possession in 1865. From the erection of the house in the fall of 1865 to the filing of the suit was less than ten years. Appellant could not receive any benefit from the possession subsequent to the suit as an adverse holding.

2. The inclosure of part of the street adjoining the lot No. 51 would, if continued long enough, and adverse to the city or to the public, confer title by limitation; but only under the conditions prescribed in the several statutes.

3. *What* would as a fact constitute a break in the possession the court cannot dictate. In this case, for purposes evidently temporary, an inclosure was extended across a public street and into another block; and such inclosure, from decay or other reason, was destroyed or ceased to obstruct the use of the street, which had been occupied by such inclosure; such facts might be evidence of an abandonment of the lot beyond such street, when, under similar external facts applied to parts of a farm, inclosure of which was destroyed, would not even tend to show an abandonment.

Upon abandonment of the street as a highway, the rule insisted on may exist here as at common law. Still the implied guaranty to the public in laying off the town into blocks with well defined streets, *that the streets shall be public highways*, forbids that, as a basis of limitation against the public, the deed to *the city lot* could include the street to its center. As against the right to use the street, and which is the concern here, the *lot* is bounded by the street line, and possession held under a deed for the lot adjoining a street would be limited by such line.

6. The verdict finds the fact of occupancy over upon the the street, ownership of lot 51, payment of taxes from 1861, to July, 1875, being a term, and with conditions importing to such possession the force of title, but *not* beyond its limits. The judgment, therefore, was properly rendered upon the facts found by the verdict.

7. The verdict was sufficiently sustained by testimony.

The charge of the court was quite favorable to the appellant. The jury were allowed as against him no latitude beyond the strict limits of the law.

8. If, as found by the jury, a part of the building which formed the more valuable part of the purchase was on the street, and the purchaser in no fault in the contract, he was entitled to a rescission. It is "a substantial error between the parties concerning the subject-matter of the contract." 2 Kent, 471.

The judgment below should be affirmed.

AFFIRMED